#### IN THE UNITED STATES DISTRICT COURT
#### FOR THE WESTERN DISTRICT OF TENNESSEE
#### WESTERN DIVISION

| | | |
|---|---|---|
| MARCELLUS JEFFERIES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | No. 2:22-cv-02258-SHM-tmp |
| WILLIAM B. LEE, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER DISMISSING THE COMPLAINT WITH PREJUDICE (ECF NO. 1);
DENYING LEAVE TO AMEND;
DENYING PENDING MOTION (ECF NO. 10);
CERTIFYING THAT AN APPEAL WOULD NOT BE TAKEN IN GOOD FAITH;
DENYING LEAVE TO PROCEED *IN FORMA PAUPERIS* ON APPEAL;
NOTIFYING JEFFERIES OF THE APPELLATE FILING FEE;
NOTIFYING JEFFERIES OF THE COURT'S STRIKE RECOMMENDATION UNDER
28 U.S.C. § 1915(g);
AND DISMISSING CASE IN ITS ENTIRETY**

On April 25, 2022, Plaintiff Marcellus Jefferies filed a *pro se* civil complaint pursuant to 42 U.S.C. § 1983 (ECF No. 1) and paid the civil filing fee (ECF No. 2). On April 25, 2022, summons was issued to Jefferies to serve the complaint. (ECF No. 4.) On May 6, 2022, Jefferies filed a document showing a handwritten note that says "Proof of Service." (ECF No. 7 (United States Postal Service Product ("USPS") Tracking receipt showing delivery to Lisa Puckett at "State" on April 17, 2022).) On May 20, 2022, Jefferies filed a USPS Form 3811 addressed to Governor Bill Lee. (ECF No. 8 (signed by D. Mosley on April 28, 2022).) On May 20, 2022, counsel for Governor Lee filed a motion to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(4)-(6). (ECF No. 10 (the "Motion").)

The complaint alleges that Tennessee's Sexual Offender and Violent Sexual Offender Registration Verification and Tracking Act (the "Act"), Tenn. Code Ann. § 40-39-201, *et seq.*, violates Jefferies right not to be subject to ex post facto laws, his right to exercise free speech, and

his right to due process. (ECF No. 1 at PageID 3. Jefferies sues "William B. Lee, et al." (*Id*. at PageID 1-2.) Jefferies seeks: (1) removal from the Act's sex offender registry (the "Registry"); (2) appointment of counsel; and (3) "any other relief deemed appropriate." (*Id*. at PageID 4.)

The Motion seeks dismissal of the complaint pursuant to: (1) Fed. R. Civ. P. 12(b)(4)-(5) for insufficient service and insufficient service of process (ECF No. 10-1 at PageID 22); and (2) Fed. R. Civ. P. 12(b)(6) for failure to state a claim on which relief can be granted. (*Id*. at PageID 22-23 (contending that the complaint fails to comply with Fed. R. Civ. P. 8(a)(2)'s requirement of a "short and plain statement" showing entitlement to relief).)

The complaint and the Motion are before the Court.

For the reasons explained below: (1) the complaint (ECF No. 1) is DISMISSED WITH PREJUDICE; (2) leave to amend in DENIED; and (3) the Motion is DENIED as moot.

I.  **LEGAL STANDARD**

The Court is required to screen prisoner complaints and to dismiss any complaint, or any portion thereof, if the complaint —

(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or

(2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(b); *see also* 28 U.S.C. § 1915(e)(2)(B).

In screening the complaint under the Prison Litigation Reform Act ("PLRA"), the Court applies the standards of Fed. R. Civ. P. 12(b)(6), as stated in *Ashcroft v. Iqbal*, 556 U.S. 662, 677-79 (2009) and in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-57 (2007). *Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010). The Court accepts a plaintiff's "well-pleaded" factual allegations as true and then determines whether the allegations "'plausibly suggest an entitlement to relief.'" *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 681). Conclusory allegations "are not entitled to the assumption of truth," and legal conclusions "must

2

be supported by factual allegations." *Iqbal*, 556 U.S. at 679. Although a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), Rule 8 requires factual allegations to make a "'showing,' rather than a blanket assertion, of entitlement to relief." *Twombly*, 550 U.S. at 555 n.3.

"*Pro se* complaints are to be held 'to less stringent standards than formal pleadings drafted by lawyers,' and should therefore be liberally construed." *Williams*, 631 F.3d at 383 (quoting *Martin v. Overton*, 391 F.3d 710, 712 (6th Cir. 2004)). However, *pro se* litigants are not exempt from the requirements of the Federal Rules of Civil Procedure. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989); *see also Brown v. Matauszak*, 415 F. App'x 608, 612, 613 (6th Cir. Jan. 31, 2011) (affirming dismissal of *pro se* complaint for failure to comply with "unique pleading requirements" and stating "a court cannot 'create a claim which [a plaintiff] has not spelled out in his pleading'" (quoting *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975))).

Jefferies filed his complaint (ECF No. 1) pursuant to 42 U.S.C. § 1983, which provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

To state a claim under § 1983, a plaintiff must allege two elements: (1) a deprivation of rights secured by the "Constitution and laws" of the United States (2) committed by a defendant acting under color of state law. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970).

## II.   ANALYSIS

### A.   Jefferies's Claims Under § 1983 Are Barred By The Statute Of Limitations

The sole allegation in the complaint is:

3

> [T]he retroactive application of the Tennessee Sexual Offender and Violent Sexual Offender Registration Verification and Tracking Act of 2004 (hereinafter "SORA"), Tenn. Code Ann. § 40-39-218 (2018), (1) is an unconstitutional violation of the Ex Post Facto Clause of the United States Constitution, (2) violates the right to free speech guaranteed by the First Amendment, and (3) imposes oppressive restrictions in violation of the rights to parent, work, and travel under the Due Process Clause of the Fourteenth Amendment.

(ECF No. 1 at PageID 3 (the "SORA Claim").) Jefferies alleges that the events giving rise to the SORA Claim occurred "[u]pon the Plaintiff's release from the Tennessee Department of Correction, May 12, 2013. The occurrence of said constitutional violation rendered upon the Pro Se Plaintiff occurred before the calendar year of 2004." (*Id.*) As explained below, the SORA Claim is time-barred.

Tennessee first adopted a sex offender registration law in 1994, creating a sex offender registry and establishing a ten-year registration period for persons convicted of certain offenses. *See* 1994 Tenn. Laws Pub. Ch. 976. The Tennessee General Assembly has amended the 1994 version of the registration law several times, including: amendment in 2000 to provide for lifetime registration for violent sexual offenders; repeal and replacement in 2004 (*see* Tenn. Code Ann. § 40-39-201, *et seq.*); expansion of the scope of the registration law's restrictions; and extension of the law's reporting requirements. In its present form, the Act requires sex offenders to provide detailed personal information to Tennessee's database of sex offenders, some of which is included in the publicly-accessible Registry. *See Doe v. Rausch*, 382 F. Supp. 3d 783, 789 (E.D. Tenn. 2019). Offenders must report in person annually to verify and update their registration information. *Id.* The Act imposes geographic restrictions on where registered offenders may live, work, "be upon or remain," or "stand [or] sit idly." *Id.* (citing Tenn. Code Ann. §§ 40-39-211(a), (d)). Registered offenders must provide advance notification of travel outside of the State or country. *Id.* (citing Tenn. Code Ann. § 40-39-204(h)). Failure to comply with the Act's requirements may subject an offender to fines or felony criminal charges. *Id.* (citing Tenn. Code

Ann. §§ 40-39-208, 40-39-211)).

The Act was amended in 2014 to state:

> (g)(1) An offender required to register under this part shall continue to comply with the registration, verification and tracking requirements for the life of that offender, if that offender: ...
> (C) Has been convicted of an offense in which the victim was a child of twelve years of age or less.

Tenn. Code Ann. § 40-39-207(g)(1)(C).

Actions pursuant to § 1983, such as Jefferies's SORA Claim, are governed by state statutes of limitations. *See Thomas v. Bivens,* No. 3:09–CV–62, 2011 WL 32207, at *8 (E.D. Tenn. Jan. 5, 2011) (referencing *Wilson v. Garcia,* 471 U.S. 261, 269 (1985)). The limitations period for § 1983 actions in Tennessee is the one-year limitations provision in Tenn. Code Ann. § 28-3-104(a)(1)(B). *Roberson v. Tennessee*, 399 F.3d 792, 794 (6th Cir. 2005). In Tennessee, civil actions for compensatory damages or injunctive relief brought under the federal civil rights statutes must be commenced within one year of the accrual of the cause of action. *Irick v. Ray,* 628 F.3d 787, 798 (6th Cir. 2010) (citation omitted).

However, "the accrual date of a § 1983 claim is a question of federal law." *Wallace v. Kato*, 549 U.S. 384, 388 (2007). "Under federal law, the limitations period begins to run when a plaintiff knew or should have known of the injury that forms the basis of the claim." *Fox v. DeSoto*, 489 F.3d 227, 233 (6th Cir. 2007). The discovery rule provides that "the statute of limitations commences to run when the injury occurs or is discovered, or *when in the exercise of reasonable care and diligence, it should have been discovered.*" *Gilmore v. Davis*, 185 F. App'x 476, 481 (6th Cir. 2006) (emphasis in original) (quoting *McCroskey v. Bryant Air Conditioning Co.*, 524 S.W.2d 487, 494 (Tenn. 1975)); *see also Quality Auto Parts Co. v. Bluff City Buick Co.*, 876 S.W.2d 818, 820 (Tenn. 1994).

The only dates alleged in the complaint are 2004 and 2013. (ECF No. 1 at PageID 3.) The

5

plausible inference from Jefferies's allegations is that he was released from confinement in 2013. (*See id.*) Under the 2013 version of the Act: (1) "[a]n offender who is incarcerated in this state in a local, state or federal jail or a private penal institution shall, within forty-eight (48) hours prior to the offender's release, register or report in person, completing and signing a TBI registration form, under penalty of perjury", *see* Tenn. Code Ann. § 40-39-203(b)(1) (West 2013); and (2) after registering or reporting with the incarcerating facility, "an offender … shall, within forty-eight (48) hours after the offender's release from the incarcerating institution, report in person to the offender's registering agency …" Tenn. Code Ann. § 40-39-203(b)(2) (West 2013). Accepting as true Jefferies's allegation that he was released from confinement in 2013, the complaint's factual allegations and the 2013 version of the Act demonstrate that he would have had to register within forty-eight (48) hours of his release in 2013. *See* Tenn. Code Ann. § 40-39-203(b)(1)-(2). Jefferies would have been aware of his alleged injuries from the Act in 2013. The SORA Claim accrued under the discovery rule, and the one-year statute of limitations began to run, when Jefferies was released in 2013. The statute of limitations expired in 2014 – *i.e.*, one (1) year after Jefferies was required to comply with the Act, such as by registering on the Registry. Jefferies filed the complaint on April 23, 2022, more than seven (7) years later. (ECF No. 1 at PageID 4) (deemed filed on April 23, 2002); *see also Houston v. Lack*, 487 U.S. 266, 270, 276 (1988) (adopting the mailbox rule for federal *pro se* prisoner filings).) The SORA Claim is time-barred.

The continuing violation doctrine does not alter that conclusion. Jefferies alleges no facts demonstrating a continuing violation of his constitutional rights by the Act. *See National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002) (under the continuing violation doctrine, a court may toll the statute of limitations for allegedly wrongful conduct that is continuing in nature); *Eidson v. Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 635 (6th Cir. 2007) (the continuing violation doctrine applies when (1) the defendant's wrongful conduct continued after the

6

precipitating event; (2) injury to the plaintiff continued to accrue after that event; and (3) further injury to the plaintiff was avoidable if the defendants had, at any time, ceased their wrongful conduct).[1]  Jefferies alleges that the Act "violates the right to free speech … and imposes oppressive restrictions [on] the rights to parent, work, and travel." (ECF No. 1 at PageID 3.) Those vague allegations do not identify how the Act violated constitutional rights in Jefferies's circumstances or when the supposed violations occurred. Jefferies alleges unsupported legal conclusions about the Act (*see id.*), but he does not plead supporting facts. The complaint alleges no facts supporting application of the continuing violations doctrine in Jefferies's case. *See Guba,* 600 F. App'x at 380.

The SORA Claim is DISMISSED WITH PREJUDICE because it is time-barred.

**B. Jefferies Would Fail To State A Claim To Relief Even If His Allegations Were Construed As Arising On Or After April 23, 2021**

Even if the Court construes the complaint to allege wrongful conduct that occurred on or after April 23, 2021, Jefferies's allegations fail to state claims to relief for the following reasons:

1.  *Alleged Violation Of The Ex Post Facto Clause*:  Jefferies alleges that the Act "is an unconditional violation of the Ex Post Facto Clause of the United States Constitution." (ECF No. 1 at PageID 3.)

The Constitution provides that "[n]o State shall ... pass any ... ex post facto Law." U.S. Const. art. I § 10, cl. 1. An ex post facto law is a "retrospective" law that applies "to events occurring before its enactment" and "disadvantage[s] the offender affected by it ... by altering the definition of criminal conduct or increasing the punishment for the crime." *Lynce v. Mathis*, 519

---

[1] *See also Guba v. Huron Cnty.*, 600 F. App'x 374, 380 (6th Cir. 2015) (the continuing violation doctrine applies only "in appropriate contexts" in § 1983 cases); *Sharpe v. Cureton*, 319 F.3d 259 (6th Cir. 2003) (federal courts are generally reluctant to apply the continuing violations doctrine to § 1983 actions).

U.S. 433, 441 (1997); *see also Cutshall v. Sundquist*, 193 F.3d 466, 476 (6th Cir. 1999), *cert. denied*, 529 U.S. 1053 (2000) ("The clause is designed to protect against legislative abuses and to provide fair notice of the consequences of criminal actions"). The Constitution "does not bar all retroactive lawmaking, but only retroactive punishment." *Does v. Snyder*, 834 F.3d 696, 699 (6th Cir. 2016), *cert. denied*, 138 S.Ct. 55 (2017).

In cases alleging ex post facto violations, the United States Supreme Court has upheld the retroactive application of sex offender registries. *See*, *e.g.*, *Smith v. Doe*, 538 U.S. 84, 96, 106 (2003) (holding that Alaska's Sex Offender Registration Act was nonpunitive and therefore its retroactive application did not violate the Ex Post Facto Clause). The Sixth Circuit has rejected ex post facto challenges to prior iterations of the Act. *See, e.g., Doe v. Bredesen*, 507 F.3d 998, 1001 (6th Cir. 2007), *cert. denied*, 555 U.S. 921 (2008); *Cutshall*, 193 F.3d at 474.

In *Smith*, the United States Supreme Court established the framework for considering ex post facto challenges to sex offender registry laws. Under the "intents-effects" test, courts examine: (1) did the legislature intend to impose punishment; and (2) if not, whether the statutory scheme is "so punitive in either purpose or effect as to negate [the State's] intention to deem it civil." *Smith*, 538 U.S. at 92. *See also Doe v. Rausch* 461 F. Supp. 3d 747, 793 (E.D. Tenn. 2020); *Snyder*, 834 F.3d at 700; *Cutshall*, 193 F.3d at 477.

Jefferies does not allege that the Act is punitive. (*See* ECF No. 1.)[2] The Court, therefore, must consider whether the Act, in Jefferies's case, was so punitive in effect as to violate the Ex

---

[2] *See also* Tenn. Code Ann. § 40-39-201(b)(8) ("[I]n making information about certain offenders available to the public, the general assembly d[id] not intend that the information be used to inflict retribution or additional punishment on those offenders"); *Rausch*, 382 F. Supp. 3d at 783 (the court "accept[ed] for purposes of [discussion therein] that the 2014 amendment to the Act was *not* intended to impose punishment") (emphasis added); *Ward v. State*, 315 S.W.3d 461, 470 (Tenn. 2010) ("The plain language of this statute expresses a nonpunitive intent to protect the public").

8

Post Facto Clause. *Smith*, 538 U.S. at 92. Courts consider five non-dispositive guideposts (the "Effects Factors") when evaluating a challenged statute's actual effects:

> (1) Does the law inflict upon a plaintiff what has been regarded in our history and traditions as punishment?
> (2) Does it impose an affirmative disability or restraint on plaintiff?
> (3) Does it promote the traditional aims of punishment against plaintiff?
> (4) Does it have a rational connection to a non-punitive purpose?
> (5) Is it excessive with respect to this purpose?

*Rausch*, 461 F. Supp. 3d at 762 (citing *Snyder*, 834 F.3d at 701 (citing *Smith*, 538 U.S. at 97)). Jefferies does not allege facts demonstrating how the Act has been applied in his particular circumstances.[3]

For example, the complaint does not allege facts showing that: the Act imposes an affirmative disability or restraint on Jefferies; the Act promotes the traditional aims of punishment against him; the Act has no rational connection to a non-punitive purpose; or the Act is excessive in Jefferies's circumstances with respect to a non-punitive purpose. *See Rausch*, 461 F. Supp. 3d at 762. In considering the Effects Factors, the Court "cannot speculate whether [parties] *could* produce such information or not." *See Rausch*, 382 F. Supp. 3d at 799 (emphasis in original). The complaint does not demonstrate that the Act: (1) particularly inflicts on Jefferies what has been regarded in history and tradition as punishment; (2) directly restrains particular types of Jefferies's personal conduct; (3) promotes the traditional aims of punishment, such as recidivism and deterrence, as applied to Jefferies; (4) lacks a rational connection to a non-punitive purpose in Jefferies's circumstances, such as the protection of the public; and (5) counterbalances the Act's negative effects with positive ones, such as recidivism prevention by restricting Jefferies's work

---

[3] The Court construes the SORA Claim to allege an as-applied challenge under ex post facto law. *See Reno v. Flores*, 507 U.S. 292, 300 (1993). The plausible inference from the complaint is that Jefferies alleges the Act, as applied to him, has violated his rights of free speech, travel, and employment. (ECF No. 1 at PageID 3.)

and travel. The Court may not speculate whether Jefferies *could* allege such facts. *See Rausch*, 382 F. Supp. 3d at 799.

Jefferies alleges insufficient facts about the *Smith* intents-effects test's two prongs. The complaint fails to state a claim to relief for violation of the Ex Post Facto Clause.

2. <u>*Alleged Deprivation Of First Amendment Right To Free Speech*</u>: Jefferies alleges generally that the Act "violates the right to free speech guaranteed by the First Amendment." (ECF No. 1 at PageID 3.)

The First Amendment protects "the right to speak freely and the right to refrain from speaking at all." *Wooley v. Maynard*, 430 U.S. 705, 714 (1977). The government "may not compel affirmance of a belief with which the speaker disagrees." *Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Boston*, 515 U.S. 557, 573 (1995). When the government tries to do so, it violates this "cardinal constitutional command." *Meriwether v. Hartop*, 992 F.3d 492, 503 (6th Cir. 2021) (citing *Janus v. Am. Fed'n of State, Cnty. & Mun. Emps., Council 31*, 138 S. Ct. 2448, 2463 (2018)). To state a First Amendment claim to relief under § 1983, Jefferies must demonstrate that: "(1) he engaged in constitutionally protected speech, (2) the defendant's adverse action caused an injury that would chill a person of ordinary firmness from continuing the activity, and (3) that action was motivated at least in part by the plaintiff's exercise of his constitutional rights." *See Ryan v. Blackwell*, 979 F.3d 519, 526 (6th Cir. 2020) (internal citation omitted).

Jefferies does not allege any speech in which he claims to have engaged or how the Act prohibited that speech. Jefferies's vague allegation of First Amendment violation, *see* ECF No. 1 at PageID 3, "do[es] not even approach articulating a viable freedom of speech claim." *See DeSoto v. Bd. Of Parks & Recreation*, 64 F. Supp. 3d 1070, 1088 (M.D. Tenn. 2014). *See also Brown v. Lee*, No. 20-cv-0916, 2020 WL 7864252, at *6 (M.D. Tenn. Dec. 30, 2020) ("Brown has not plausibly alleged a claim based on the First … Amendment[]. The Complaint does not contain

10

any facts to suggest how SORA [*i.e.*, the Act] impacts Brown's First Amendment rights (such as an alleged regulation of speech)").

Jefferies fails to allege sufficient facts stating a claim to relief for deprivation of free speech in violation of the First Amendment.

3.  *Alleged Deprivation Of Fourteenth Amendment Right To Due Process*: Jefferies alleges that the Act "imposes oppressive restrictions in violation of the rights to parent, work, and travel under the Due Process Clause of the Fourteenth Amendment." (ECF No. 1 at PageID 3.) Jefferies does not identify the "oppressive restrictions" he challenges. (*See id*.) He does not describe how the Act purportedly limits his ability to parent, work, and travel. (*See id*.)

"[S]ubstantive due process limits the impingement of certain fundamental rights regardless of process." *Thomas v. Cohen*, 304 F.3d 563, 578 (6th Cir. 2002). "The substantive component of the Due Process Clause forbids the government from depriving a person of life, liberty, or property in such a way that ... interferes with rights implicit in the concept of ordered liberty." *Calm Ventures, LLC v. Newsom*, 548 F. Supp. 3d 966, 978 (C.D. Cal. 2021) (internal citation omitted). Substantive due process only "protects those fundamental rights and liberties which are, objectively, deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed." *Guertin v. State*, 912 F.3d 907, 918 (6th Cir. 2019) (quotation omitted). To state a cognizable substantive due process claim, a plaintiff must allege "that a statute or government action burdens a fundamental right and cannot withstand strict scrutiny." *Beydoun v. Sessions*, 871 F.3d 459, 467 (6th Cir. 2017) (quotation omitted). To satisfy that test, a plaintiff must allege a government action that, at a minimum, "*significantly* interferes with the exercise of a fundamental right." *Id*. (emphasis in original) (quotation omitted). As explained below, Jefferies does not demonstrate facts that satisfy this test for the rights to work, parent, and travel that he alleges

(a) *Right To Work*: The United States Supreme Court has held that the "Due Process Clause includes some generalized due process right to choose one's field of private employment." *Conn v. Gabbert*, 526 U.S. 286, 291–92 (1999); *see also Railway. Employees' Dep't v. Hanson*, 351 U.S. 225, 234 (1956) ("[T]he right to work, which the Court has frequently included in the concept of 'liberty' within the meaning of the Due Process Clause may not be denied by the Congress") (citations omitted); *Terrace v. Thompson*, 263 U.S. 197, 215 (1923) (protecting the "right to earn a livelihood by following the ordinary occupations of life"). The Supreme Court, however, has never held that the right to earn a living is a fundamental liberty interest that, traditionally, has been protected by the substantive component of the Due Process Clause. District Courts in the Sixth Circuit have held that the Act does not violate an alleged fundamental right to work. *See*, *e.g.*, *Doe v. Haslam*, No. 3:16-cv-02862, 2017 WL 5187117, at *16 (M.D. Tenn. Nov. 9, 2017).

The Court liberally construes the complaint to allege that the Act limits the types of employment Jefferies may seek or makes his job search more challenging, which is not clearly alleged in the complaint. Even as liberally construed, the complaint does not allege that the Act significantly burdens a fundamental right to work. "The simple fact that the Act may make it more difficult to find employment does not mean Plaintiff is not free to choose a particular profession." *Doe v. Rausch*, No. 22-cv-1131-STA-jay, 2023 WL 25734, at *15 (W.D. Tenn. Jan. 3, 2023); *see also Brown*, 2020 WL 7864252, at *7 (concluding that allegations of being "denied employment opportunity" and "denied housing" because placed on the Act's Registry are not deprivations of a protected interest that trigger heightened review) (citing *Haslam*, 2017 WL 4187117, at *16 (collecting cases and explaining that there is no fundamental right to private employment)).

Because the Act does not implicate a fundamental right, the Act need only survive rational-basis review. *See Doe v. Mich. Dep't of State Police*, 490 F.3d 491, 503-04 (6th Cir. 2007). Under

12

rational-basis review, the Act is constitutional if there is "any reasonably conceivable state of facts that could provide a rational basis for it." *Mich. Dep't of State Police*, 490 F.3d at 503-04 (internal citations omitted). The Court has previously concluded that the Act "'serve[s] the legitimate interest of the State of inhibiting future sexual offenses, particularly against children, while not limiting the ability of Plaintiffs to seek and obtain any type of employment' that does not require Plaintiffs to come into contact with children." *Rausch*, 2023 WL 25734, at *15 (internal citations omitted). The Act survives rational-basis review. *See Newsome v. Lee*, No. 21-cv-0041, 2021 WL 1697039, at *1 (M.D. Tenn. Apr. 29, 2021) (dismissing the plaintiff's substantive due process challenge to the Act as "inadequately pled" because "[p]laintiff has not pleaded any facts that allow the Court to draw the inference that Tennessee did not have 'any plausible reason' for enacting employment or residency restrictions [under the Act]").

Jefferies fails as a matter of law to state a claim to relief for the Act's alleged violation of his right to work.

(b) *Right To Parent*: The Constitution protects a parent's right to raise his children. *See Troxel v. Granville,* 530 U.S. 57, 66 (2000); *see also Barrett v. Steubenville City Schools*, 388 F.3d 967, 972 (6th Cir. 2004). That right includes the rights to "companionship, care, custody and management" of one's children. *Lassiter v. Dep't of Soc. Servs. of Durham Cnty., N.C.*, 452 U.S. 18, 27 (1981). Jefferies neither alleges that he has children nor describes how the Act restricts his right to parent. (*See* ECF No. 1.)

To the extent the complaint alleges that the Act limits Jefferies's ability to participate in his children's activities when other youth are present, which is not clearly alleged in the complaint, Jefferies fails to state a claim to relief. "If the right to parent does not allow parents to demand their children be allowed to participate in extracurricular activities with no restrictions, neither can it allow parents to demand they be allowed to participate in such activities with no restrictions."

13

*Rausch*, 2023 WL 25734, at *15. Jefferies does not allege that he has requested, and been denied, permission to drop off or pick up his children from school or extracurricular activities. *See id.* (citing Tenn. Code Ann. § 40-39-211(d)(2)(D)). As alleged in the complaint, purported violation of Jefferies' constitutional right to parent is conjecture.

(c) *Right To Travel*: "[T]he constitutional right to travel generally [relates to] a person's freedom of travel throughout the United States." *I-Remiel Azariah: Ibn Yahweh v. Shelby Cnty. Gen. Sessions Court*, No. 12-3073, 2014 WL 1689297, at *5 (W. D. Tenn. Apr. 29, 2014) (internal citation omitted). Jefferies alleges no facts demonstrating the Act restricts his ability to travel, whether throughout the United States or otherwise. As alleged in the complaint, purported violation of Jefferies' constitutional right to travel is speculation.

4. *Claims Against "Et Al."*: Jefferies sues "et. al." as a Defendant. (ECF No. 1 at PageID 1-2.) Jefferies's use of "et. al." fails to state a claim against anyone. *See Marcilis v. Twp. of Redford*, 693 F.3d 589, 596–97 (6th Cir. 2012); *Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002). Jefferies may not make claims against a universe of unspecified persons who have no notice of claims against them.

5. *Conclusion*: For the reasons explained above, even if the complaint is construed to allege claims that arose on or after April 23, 2021, Jefferies demonstrates insufficient facts to state a claim to relief under § 1983.

### III. AMENDMENT UNDER THE PLRA

The Court DENIES leave to amend under 28 U.S.C. §§ 1915(e)(2)(B)(i)–(ii) and 1915A(b)(1). The Sixth Circuit has held that a district court may allow a prisoner to amend his complaint to avoid a *sua sponte* dismissal under the PLRA. *Lucas v. Chalk*, 785 F. App'x 288, 291 (6th Cir. 2019) (citing *LaFountain v. Harry*, 716 F.3d 944, 951 (6th Cir. 2013). The Sixth Circuit prefers "liberality" in allowing amendment at the screening stage under the PLRA. *Lucas*

*v. Chalk*, 785 F. App'x at 292 . The Sixth Circuit has concluded that "[i]f it is at all possible that the party ... can ... state a claim for relief, the court should dismiss with leave to amend." *Id.* (internal quotation marks omitted).

In cases where it would not be possible for a plaintiff to amend his complaint to state a claim for relief, leave to amend should not be granted. *See Gonzalez-Gonzalez v. United States*, 257 F.3d 31, 37 (1st Cir. 2001) ("If it is crystal clear that the plaintiff cannot prevail and that amending the complaint would be futile, then a *sua sponte* dismissal may stand."); *Curley v. Perry*, 246 F.3d 1278, 1281–82 (10th Cir. 2001). Jefferies's lawsuit is one such case.

The complaint's claims are time-barred. Jefferies does not have actionable claims even if he amends. Jefferies should not be given the opportunity to amend the complaint because amendment would be futile.

### IV.   CONCLUSION

For the reasons explained above:

A.   The complaint (ECF No. 1) is DISMISSED WITH PREJUDICE because it is time-barred. *See* 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1). Leave to amend is DENIED. Because this case will not proceed, Jefferies's request for appointment of counsel (ECF No. 1 at PageID 4) is DENIED.

B.   Under Federal Rule of Appellate Procedure 24(a) and 28 U.S.C. § 1915(a)(3), the Court considers whether an appeal by Jefferies would be taken in good faith. *See Callihan v. Schneider*, 178 F.3d 800, 803–04 (6th Cir. 1999). Under Rule 24(a), if the district court permits a party to proceed *in forma pauperis*, that party may also proceed on appeal *in forma pauperis* without further authorization. There is an exception when a District Court "certifies that the appeal is not taken in good faith or finds that the party is not otherwise entitled to proceed *in forma pauperis*." Fed. R. App. P. 24(a)(3)(A). If a District Court denies pauper status, a party may move

to proceed *in forma pauperis* in the Court of Appeals. Fed. R. App. P. 24(a)(4)–(5). The good faith standard is an objective one. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). The test for whether a party appeals in good faith is if the litigant seeks appellate review of any issue that is not frivolous. *Id.* "It would be inconsistent for a court to determine that a complaint should be dismissed prior to service on Defendants but has sufficient merit to support an appeal *in forma pauperis*." *DePriest v. Prestress Servs., Inc.*, No. 13-2768-JDT-cgc, 2014 WL 1269933, at *1 (W.D. Tenn. Mar. 27, 2014) (citing *Williams v. Kullman*, 722 F.2d 1048, 1050 n.1 (2d Cir. 1983)).

For the same reasons this Court dismisses the complaint as time-barred, the Court finds that an appeal would not be taken in good faith. The Court therefore CERTIFIES, under Federal Rule of Appellate Procedure 24(a), that any appeal here by Jefferies would not be taken in good faith. The Court DENIES leave to proceed on appeal *in forma pauperis*. If Jefferies appeals, he must pay the full $505 appellate filing fee or move for leave to appeal *in forma pauperis* with a supporting affidavit in the Sixth Circuit. *See* Fed. R. App. P. 24(a)(5).

C. Because the Court is dismissing the complaint as time-barred, the Motion (ECF No. 10) is DENIED as moot.

D. The "three strikes" provision of 28 U.S.C. § 1915(g) prevents a court from granting *in forma pauperis* status to a prisoner who "has, on 3 or more prior occasions, while incarcerated ... brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(g). For § 1915(g) analysis of Jefferies's future filings, if any, the Court RECOMMENDS that this dismissal be treated as a STRIKE pursuant to 28 U.S.C. § 1915(g). *See Simons v. Washington*, 996 F.3d 350, 353 (6th Cir. 2021).

IT IS SO ORDERED, this 30th day of March, 2023.

                                                  /s/ *Samuel H. Mays, Jr.*
                                                  SAMUEL H. MAYS, JR.
                                                  UNITED STATES DISTRICT JUDGE